Smith, J.
On consideration of this case we hold,
1st. That the Turnpike Company is not the owner,in fee simple, of the land over which this bridge is erected; that it has simply the right to use the same for the purposes of a turnpike road.
2nd. That the bridge now erected there, or in process of erection, being only thirteen and one-half feet above the surface of the turnpike road, it is probable that it may interfere to some extent with the proper use of the said turnpike, by vehicles of extraordinary height as have of late years come into occasional use in this region — such as ^‘Tallyho'’, furniture vans, etc. We would not, however, be disposed to hold that a bridge of a railroad company, over a roadway like this, must be so high above the surface of the ground underneath it, as not to interfere in any degree with the passage of vehicles along the road, no matter how high they might be constructed or loaded. The use of the road must be a reasonable one. And the claim made in the affidavits filed by the Turnpike Company,that it is possible or probable that this roadway may in the fu.ture have a street railway thereon, and that (if so) the cars can not pass under this bridge unless it is raised several feet above its present height," without lowering its trolleys, does not strike us as entitled to consideration. Evidently the trolley may be lowered at that point without difficulty. But inasmuch as there seems to be some reason to apprehend that this bridge, as being now constructed, may interfere with the reasonable use of the turnpike in a few cases, as for instance, by wagons loaded with hay, chairs, etc., as the road has been used by them, we think that some provision should be made to guard against this — -though it is true that there are other bridges over this same road, on either side of this one, which are much lower than the one in question. But *270 as the cost of raising this bridge and the approaches on either side of it for a long distance would be very considerable and the height of the bridge and roadway was not objected to until recently,we think it would be inequitable to require it to be done,if the trouble can otherwise be avoided at much less cost, and we think it can by lowering the surface of the turnpike. We suggest therefore, that unless the parties can agree as to the cost of doing this, and- putting the turnpike road into substantially as good a condition as it now is, that an expert engineer be sent out to view the premises and report to the court whether it can be done, and the cost of it, and how it should be done, so that there will be a space of fifteen feet between the bridge and the surface of the turnpike road. If it then appears to us that it is practicable to do this at a reasonable cost, we would feel disposed to require this sum to be paid to the turnpike company, by the railroad company, to be applied by it to doing the work, or require the railroad company to perform the work to the satisfaction 'of the court, as a condition to our allowing the bridge to remain at its .present location. If the turnpike company refuses to take the money and do the work, qr to have it done by the company, its application for an injunction will be overruled; in the meantime the provisional injunction heretofore allowed, will be dissolved.
After we had reached the foregoing conclusion, and after the writing of the above memorandum, our attention was called by counsel to the fact that some days after the hearing of the application in this court, the turnpike company had obtained from the person owning the fee thereof, a quit-claim deed for that part of the ground covered by the roadway of the plaintiff company which lies between the west line of the turnpike at that point, and the center line thereof. . It seems that when the railroad company recently purchased the ground upon which to construct its new track and cross the turnpike road by the bridge in question, it *271 only purchased from the owner up to the west line of the turnpike, and that the land on the east was purchased by it to the center of such road, This fact becoming known to the turnpike company at the hearing in this court, it obtained a deed from the owner of the land as stated, and now seeks to strengthen and support its original claim thereby. Should this fact induce us to change or modify in any way' the conclusion at which we had arrived before being advised of this fact?
E. MeColston, for Plaintiff.
Hollister & Hollister, for Defendant.
We do not feel disposed to do so. We question very much whether the turnpike company, under the laws as they now stand, has any legal right to acquire the fee simple of this ground for any such purpose. There is no doubt but that it is now entitled to, and is using and occupying the space in question, for turnpike purposes, and they have an easement in it for such purpose. There is no claim or evidence that the fee is necessary for such use, or that it is needed for any other purpose than to binder or defeat a great public improvement in process of construction and nearly completed, and this should not be allowed unless its right is clear. We therefore adhere to our original ruling, and think that the suggestions therein made should be acted upon by the parties.